1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10

11   STANLEY W. CATCHPOLE,
                                                    No. C 09-5065 KLS
12              Plaintiff,

13        v.                                         ORDER GRANTING DEFENDANT'S
                                                     PARTIAL MOTION FOR SUMMARY
14                                                   JUDGMENT and DENYING
     DIANE WAGNER,                                   PLAINTIFF'S PARTIAL MOTION FOR
15                                                   SUMMARY JUDGMENT
                Defendant.
16

17

18       Stanley W. Catchpole filed this citizen suit under Section 505 of the Clean Water Act (CWA), as

19   amended, 33 U.S.C. § 1365 seeking a declaratory judgment, injunctive relief, civil penalties and an award

20   of costs including attorneys' and expert witness fees for alleged repeated and ongoing violations of §§

21   301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344 - for the unlawful discharge of dredged or

22   fill material into the waters of the United States.  Mr. Catchpole alleges that the unlawful discharge of the

23   dredged or fill material occurred on August 3, 2006 and that this violation is ongoing or reasonably likely

24   to continue to occur.  Dkt. 1.  This lawsuit was filed on February 5, 2009.

25       The Plaintiff filed a motion for partial summary judgment requesting the court enter judgment in

26   his favor on his claims and to dismiss Ms. Wagner's malicious prosecution claim.  Dkt. 19.

27       The Defendant filed a motion for partial summary judgment requesting dismissal of the plaintiff's

28   complaint with the only remaining issues then being the defendant's counter-claim for malicious

1   prosecution and determination of fees and costs.  Dkt. 31.

2           Based on the undersigned's review of the record and considering the argument of counsel, The

3   Court GRANTS the Defendant's Motion for Partial Summary Judgment and hereby DISMISSES the

4   Plaintiff's Complaint.  The Court GRANTS the Plaintiff's Motion for Partial Summary Judgment and

5   hereby DISMISSES the Defendant's Counterclaim for Malicious Prosecution.

6                                          **UNDISPUTED FACTS**

7           Stanley Catchpole and Diane Wagner[1]  are, unfortunately, neighbors.  They might have been

8   friendly neighbors were it not for the fact that Ms. Wagner owns a 60' private road easement that runs east

9   and west along the south property line of Mr. Catchpole's lot and then a 30' easement that runs north and

10  south along the eastern boundary of the Plaintiff's property.  Dkt. 29, § 9 and Exh. B.

11          Ms. Wagner purchased her two lots in 1999.  On March 28, 2004 Ms. Wagner advised Mr.

12  Catchpole that she was planning to begin using the easement.  She followed this conversation with a letter

13  dated April 23, 2004.  Dkt. 29, Exh. C.  Mr. Catchpole did not agree with Ms. Wagner using the

14  easement.        Ms. Wagner filed a quiet title lawsuit in Pierce County on May 13, 2005.  A bench trial

15  was held May 11 - 15, 2006.  The trial judge entered a Judgment and Decree on June 30, 2006.  Dkt. 29,

16  Exh. D.  As part of the Judgment, Mr. Catchpole was 'permanently enjoined from obstructing Wagner's

17  use of the south sixty (60) feet and the east thirty (30) feet of Lot 4 [Mr. Catchpole's lot] . . . for ingress to

18  and egress from Lots 2 and 3 [Ms. Wagner's lots] of said Large Lot Subdivision."  Dkt. 29, Exh. D.

19  Finally, Mr. Catchpole was ordered to remove certain obstructions from the easement area within 10

20  business days of the entry of the order.  Dkt. 29, Exh. D.

21          In the fall of 2004, prior to the quiet title action,  Mr. Catchpole planted seedling trees in the area

22  of the 60' easement.  He planted additional seedlings in the easement area in April 2006, several weeks

23  prior to the commencement of the civil trial.  Dkt. 29, ¶ 19.

24          On August 2, 2006, Ms. Wagner's then husband removed the seedling trees which had been

25  planted in the 60' easement area.  On the following day, August 3, 2006  he grade the area within the 60'

26  easement with a box scraper attached to a tractor.  Dkt. 29.

27  _____

28          [1]While the Court is aware the Defendant now goes by the name of Harder, the Court will use the name of Wagner as is
    shown in the caption.

On September 22, 2006, Kristina G. Tong, a Senior Scientist with the U.S. Army Corps of Engineers conducted a site visit on the Catchpole property for the purpose of determining if wetlands within the easement area were subject to the Clean Water Act and if unauthorized work had occurred in the wetlands.  At the time of Ms. Tong's visit she observed a "long cleared area with sparse vegetation and some ponding of water."  As a consequence of her visit, she wrote a letter to Stan Catchpole in which she advised him that "the wetlands that are located within the easement are not waters of the U.S. (Drawing enclosed).  As such, work that would occur within the wetlands located in the easement does not require Department of the Army authorization under Section 404 of the Clean Water Act."  Dkt. 50, Exh. A.

Ms. Tong stated, in her Declaration, that when she was on site she "did not observe any work that would cause impacts to navigation," that there would be a "low potential for any cultural resources to exist on the site," and that "there might be slight impacts to water quality which appeared to be fleeting in nature - less than two months."  Dkt. 50.

Based on Ms. Tong's letter, the grading Ms. Wagner had performed on the easement did not violate any requirement of the Clean Water Act.

However, on January 23, 2008 and February 15, 2008 Casey Ehorn, a project manager with the U.S. Army Corps of Engineers conducted two site visits on Mr. Catchpole's property, the same property visited only 16 months earlier by Ms. Tong.  The purpose of Mr. Ehorn's visits was to determine if the wetlands on the Catchpole easement were subject to jurisdiction under the Clean Water Act and not to investigate the work Ms. Wagner had done.  Dkt. 49.  He made a third visit on April 18, 2008, "for the purpose of verifying the delineation that was submitted by Jeremy Downs."  Dkt. 49, ¶5.  Mr. Catchpole hired Mr. Downs to review Mr. Catchpole's property for the presence of wetlands.  Mr. Downs also had been in contact with Mr. Ehorn prior to Mr. Ehorn's January 2008 site visit.  Dkt. 29, ¶31; Dkt. 49, ¶7.

As a result of his visits, Mr. Ehorn authored a memorandum dated March 7, 2008 (Dkt. 49, Exh. A) and completed a "Seattle District Enforcement Action Decision Matrix."  Dkt. 49, Exh. B.  In the memorandum, Mr. Ehorn noted that "[b]ased on new guidance and a post Rapanos re-visit of the JD [jurisdictional determination], the Corps found that the Catchpole wetlands are adjacent to a ditch that runs through an agricultural field (non-RPW) that is tributary to the Puyallup River, a navigable water of

1   the U.S." He also commented regarding the grading performed on behalf of Ms. Wager and noted as

2   follows: "[t]he work resulted in minor re-grading of wetlands in the easement area, but did not convert

3   wetlands to uplands or substantially degrade these wetlands.  There are no ESA listed species that use the

4   subject site."  Dkt. 49.

5         Based on the facts as he determined them, Mr. Ehorn recommended that no enforcement action be

6   taken because (1) the work had no impacts to navigation, cultural resources, or water quality; (2) the work

7   had no effect on Endangered Species Act (ESA) listed species or critical habitat; and (3) the work resulted

8   in minor impacts; the area should naturally restore itself.  Dkt. 49, Exh. A.

9         Mr. Ehorn also noted that at the time he was on site there were no signs of "disking, grading,

10  filling or dredging within the easement area.  I did not observe any differences in grade or contour

11  between the easement area and the surrounding property."  Dkt. 49.

12        It is undisputed that Ms. Wagner has not had the easement graded since August 3, 2006.

13        Ms. Wagner did have the easement hydroseeded on October 26, 2006.  Dkt. 29.  It is undisputed

14  that the hydroseeding "aided in the restoration of the easement by providing a temporary cover for bare

15  soils. This allowed the wetland species to naturally seed in and increase over time, which has occurred."

16  Dkt. 47, ¶10.

17        By letter dated July 2, 2008, Ms. Wagner confirmed with the Army Corps of  Engineers that she

18  could mow the easement area without a permit as "mowing and normal driving activities do not usually

19  involve a discharge of dredged or fill material, therefore a Section 404 DA permit is not required."  Dkt.

20  29, Exh. G.   The background to this letter has more to do with the poor relationship between the parties

21  as Mr. Catchpole had called the Pierce County Sheriff in response to Ms. Wagner mowing in the

22  easement area.  The Sheriff requested written documentation confirming Ms. Wagner could mow in the

23  easement without the necessity of a permit.  Dkt. 29, Exh. H.

24        The Defendant retained the expert services of ESA Adolfson for the purpose of conducting a site

25  wetland review.  Their report, attached to the Declaration of Michael Muscari (Dkt. 30), described the

26  connection between wetlands found on the easement to the Puyallup River as follows:

27        The drainage swale that conveys water from Wetland B meanders north from the pond
          across a pasture located on Diane Harder's property, and then crosses beneath the pipeline
28        corridor (Pipeline Road East) through a 24-inch concrete pipe. . . . We did not have access

to the properties north of the pipeline corridor, but made observations from the 72nd and
64th Streets to the north of the Harder property.  A shallow swale was observed running
south to north for several hundred feet across the pasture south of 64th Street. . . .North of 64th
Street the water flows through a straight ditch into the regional stormwater pond and
then north into a ravine containing Squally Creek.  Squally Creek flows north to Clear
Creek, which connects with the Puyallup River.

The Puyallup River, which is the closest navigable waterway to the Catchpole property, is 2.6

miles distant.  Dkt. 47, ¶ 19.

The one and only time the easement was graded was on August 3, 2006.  Mrs. Wagner has made it

quite clear to the court that she understands the determination made by the Corps of Engineers and that

she will not do any future grading or other similar work in the easement area without first obtaining a

permit.

## MOTIONS TO STRIKE

Ms. Wagner's Reply Brief (Dkt. 46) includes a motion to strike portions of Stanley Catchpole's

declaration (Dkt. 43) and the entirety of Erick Gilman's declaration, Dkt. 44, Exh. A.  She also moved to

strike portions of Mr. Wagner's declaration.  (Dkt. 27).

**Catchpole Declaration (Dkt. 43).**  The Court DENIES the motion to strike page  2 ¶3:3 as the

specific statement does not require opinion testimony.  Mr. Catchpole is stating that all the vegetation in

the area was graded and turned under - this necessarily would include any vegetation that might be

wetland-adapted.

The Court GRANTS the motion to strike page 2, ¶4:12-14 and page 2, ¶ 5:21-23 as the Court

agrees that expert opinion testimony is required with regard to the return or absence of wetland plant

species.   In that regard, Mr. Catchpole has presented no information upon which to conclude that he is, in

fact, an expert in the area of wetland plant species.  He simply offers conclusory statements that Ms.

Wagner's actions have prevented the return of the species and growth patterns he observed prior to the

grading.  He, however, provides no facts to support that conclusory statement nor does he provide any

information for the Court to conclude that he has any expertise in the area of wetland plant species.   On

the other hand, Teresa Vanderburg's declaration makes it clear that "[u]nderstanding hydrology,

vegetation, and habitat within a wetland typically involves a Bachelor of Science degree in ecology,

environmental science, botany, or a related field, or extensive experience and training.  I do not believe

1   that a person having only common experience is qualified to render several of the opinions, or implied

2   opinions, expressed by Mr. Catchpole in his declaration." Dkt. 47, ¶ 7.  Ms. Vanderburg offers the

3   opinion that wetland plant species have, in fact, returned to the easement area and she identifies, with

4   specificity, the wetland plant species she has personally observed in the wetland area.  Dkt. 47, ¶ 9.  Mr.

5   Catchpole is not qualified to render an opinion regarding wetland plant species and the testimony of Ms.

6   Vanderburg is uncontradicted.  In addition, the Court notes that Ms. Vanderburg's testimony is supported

7   by the Plaintiff's expert's written report in which he notes that "[a] majority of the dominant species

8   within the delineated portion of the wetland are hydrophytic; thus, the delineated area meets the

9   hydrophytic vegetation criteria of the COE Wetland Delineation Manual." Dkt. 21, Exh. C, p. 24.[2]

10          The defendant also moved to strike Mr. Catchpole statement that certain water fowl species have

11   not visited his property since before the defendant did the grading.  Dkt. 43, p. 2 ¶5:23-25.    Mr.

12   Catchpole is not qualified to present testimony as to why certain waterfowl species have not returned to

13   his property and the testimony presented does not include any such opinion.  It does, however, infer that

14   the absence of such water fowl is solely due to the grading done at the direction of Ms. Wagner.

15   However, the Court notes that this inference is contradicted by the expert testimony of Teresa H.

16   Vanderburg, a Professional Wetland Scientist.  Dkt. 47.  Ms. Vanderburg's testimony is uncontradicted in

17   that regard and she presents the qualified expert opinion that the waterfowl referenced by the plaintiff

18   "are more typically drawn to areas such as the pond and prefer open water.  It is more likely that, if there

19   was any impact to waterfowl habitat, that it was the result of dredging and removal of vegetation around

20   the pond which was performed by Mr. Catchpole.  It is highly ulikely that the work performed by Ms.

21   Harder in August 2006 would have any impact on wildlife or waterfowl.  This is consistent with the

22   observations of the Corps." Dkt. 47, ¶18.  Mr. Catchpole's conclusory statement is not sufficient to create

23   a material issue of fact as any inference from his statement is contradicted by expert testimony, and that

24   expert testimony is undisputed.  Therefore, while the Court is not striking that portion of Mr. Catchpole's

25   declaration regarding waterfowl, the Court finds that such statement does not create a material issue of

26   fact.

27

28          [2] The Court is using the CM/ECF pagination for purposes of reference.

Order on Motions for Partial
Summary Judgment

1    The defendant requests the court to exclude statements by Mr. Catchpole regarding his opinion

2 that the defendant's activities have substantially changed the drainage patterns and that her activities have

3 had and continue to have a significant impact on the wetlands located in the easement.  Dkt. 43 at p. 2,

4 ¶5:15-18.  The Court notes that the statements by Mr. Catchpole regarding drainage patterns may be

5 based on what he has observed.  However, he is not qualified to render an opinion as to the cause of any

6 change, if in fact there has been a change, nor is he qualified to relate whatever changes he believes he

7 has observed to the actions of the defendant taken in 2006.   On the other hand, the defendant presents

8 qualified expert testimony, supported by facts, through Ms. Vandeburg that there has been no change in

9 drainage pattern.  Ms. Vandeburg also notes that "[c]hanges to drainage would be predicated on changes

10 in topography or contours of the site.  As stated in previous reports, the contours and topography of the

11 site have not been altered.  They are consistent and level with all surrounding properties."  The Court

12 therefore GRANTS the motion to strike Mr. Catchpole's declaration to the extent it contains an opinion

13 that the actions of Ms. Wagner changed the drainage patterns on his property.

14    The Court also GRANTS the motion to strike Mr. Catchpole's conclusory statement that the

15 defendant's activities had and continue to have a significant impact on the wetlands located on his

16 property (Dkt. 43, p. 2, ¶ 5:16-17) as there is no admissible, expert testimony presented in his declaration

17 to support this conclusion.

18    The Court DENYS the motion to strike the several references in Mr. Catchpole's declaration to

19 "wetlands vegetation" found at Dkt. 43, p. 3 ¶6:19 and 24 and p. 4, ¶ 7:19.  It is fair to assume that to the

20 extent there were wetlands on Mr. Catchpole's property there was wetlands vegetation located therein.

21 His declaration does not provide any specific information other than this generalized category and is more

22 intended to show what the easement looked like before and after the grading.

23    **Declaration of Gilman (Dkt. 44, Exh. A).**  Eric Gilman is one of the attorneys for Mr. Catchpole.

24 He attached to his declaration various documents, all of which were prepared by the Army Corps of

25 Engineers.  The Defendant moves to strike all the attachments for failure to comply with Fed. R. Civ. P.

26 56(e), which requires any supporting or opposing affidavit to be based on "personal knowledge, set out

27 facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters

28 stated."  Clearly Mr. Gilman cannot meet any of these requirements with regard to the attached Corps of

Order on Motions for Partial
Summary Judgment

1   Engineers documents.  Rule 56(e) also states that [i]f a paper or part of a paper is referred to in an

2   affidavit, a sworn or certified copy must be attached to or served with the affidavit."  As the Defendant

3   points out, the attachments were neither sworn or certified.  Finally, the Defendant asserts that the

4   documents should not be considered as they have not been authenticated.

5       The undersigned concludes that the attachments to Mr. Gilman's declaration do not comply with

6   Fed. R. Civ. P. 56(e) and therefore the motion to strike is GRANTED.

7       **Declaration of Kevin R. Wagner (Dkt. 20, Exh. F).**  Ms. Wagner requests that specific

8   paragraphs of Mr. Wagner's declaration be stricken either on violation of the marital privilege

9   (paragraphs 2, 6, 12, 14, and 15) or on the fact that they are based on hearsay (paragraphs 9 and 17).

10      The "privilege of a witness, person . . . shall be governed by the principles of the common law as

11  they may be interpreted by the courts of the United States in the light of reason and experience." ER 501.

12      The federal courts have long recognized the marital privilege between husband and wife as it

13  pertains to the need to protect information privately disclosed between spouses.  *Blau v United States,* 340

14  U.S. 332, 71 S. Ct. 301, 95 L.Ed. 306 (1951); *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906,

15  63 L. Ed. 2d 186 (1979).   Those confidences are privileged under the independent rule protecting

16  confidential marital communications.  *Trammel*, *supra* at p. 51.

17      On the other hand, the federal courts no longer recognize the right of one spouse to exclude

18  adverse spousal testimony.  Rather, "the witness-spouse alone has a privilege to refuse to testify

19  adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Id.* at p. 53.

20      The only issue for resolution before the court is whether any of the statements included in Mr.

21  Wagner's declaration included confidential statements that are still included within the marital privilege

22  that is recognized by the federal courts.  In that regard, the Court it is not clear what "confidential

23  communication" is included in paragraphs 2, 6, and 12 and the motion to strike those paragraphs is

24  DENIED.  It is undisputed that Mr. Wagner used a box scrapper on the property and the Court need not

25  decide whether the work was or was not done under the direction of Ms. Wagner in order the rule on the

26  motions before it.  The Court notes that there is a dispute between the parties regarding the language

27  utilized by Mr. West in his declaration, but there is nothing in those three paragraphs that attributes

28  specific language to Ms. Wagner as opposed to Mr. Wagner's own interpretation or addition of language.

Order on Motions for Partial
Summary Judgment

With regard to paragraph 14, Mr. Wagner does attribute specific statements to Ms. Wagner. However, in her declaration, Ms. Wagner testified that she and Mr. Wagner went to PALS together. Dkt. 29, ¶ 23. To the extent that Mr. Wagner's declaration attributes specific statements to Ms. Wagner regarding information provided by PALS, that does not appear to have been confidential information. The balance of this paragraph does not reference specific statements attributable to Ms. Wagner but rather discusses Mr. Wagner's knowledge or lack thereof. The motion to strike this paragraph is DENIED.

With regard to paragraph 15, Mr. Wagner does not make any specific statements that may be attributable to Ms. Wagner. He makes statements regarding what he did not do and the fact that he assumes Ms. Wagner also did not take certain steps. There does not appear to be any confidential marital communication involved in this paragraph and the motion to strike is DENIED.

Ms. Wagner also moved to strike paragraphs 9 and 17 on the basis they contained hearsay. Mr. Catchpole did not file any specific response with regard to the hearsay objections. With regard to paragraph 9, the first two sentences reflect what Mr. Wagner saw and did. However, the rest of the paragraph contains hearsay and the motion to strike the rest of the paragraph is GRANTED. With regard to paragraph 17, the Court is GRANTING the motion to strike the following portion: "including areas that Jeremy Downs had tentatively identified to me as possible wetlands" and the following phrase in the second portion of the sentence: "within those possible wetlands."

## DISCUSSION - DEFENDANT'S MOTION

Mr. Catchpole filed his motion for partial summary judgment requesting the Court (1) find, as a matter of law, that the defendant violated the Clean Water Act and (2) dismiss the defendant's counterclaim for malicious prosecution. Dkt. 19.

Ms. Wagner filed her motion for partial summary judgment requesting the Court dismiss Mr. Catchpole's Complaint. Dkt. 31. The undersigned finds that the defendant's motion is dispositive with regard to the Plaintiff's complaint.

Under the Clean Water Act, "the discharge of any 'pollutant' - which includes dredged or fill materials - into 'navigable waters' is forbidden unless authorized by a permit issued by the Army Corps of Engineers (the 'Corps')." *Leslie Salt Co. V. United States,* 55 F.3d 1388, 1391 (9th Cir. 1995).

While the parties dispute whether there is admissible evidence that the Clean Water Act applies,

for purposes of the defendant's motion for partial summary judgment, the Court accepts the proposition that the Clean Water Act is applicable and that the work Ms. Wagner had performed in the easement required an Army Corps of Engineers permit.

As noted by the defendant, the harm sought to be addressed in a citizen's suit must lie in the present or the future and not in the past. *Friends of the Earth, Inc. V. Laidlaw Envt'l Servs., Inc.,* 528 U.S. 167, 187-88 (2000) (quoting *Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 59 (1987). Citizens may seek the imposition of civil penalties for violations of the Clean Water act only in suits brought to enjoin or otherwise abate ongoing violations. *Sierra Club v. Union Oil Co. Of California,* 853 F.2d 667, 669 (9th Cir. 1988). Clearly, a citizens suit may not be maintained if it only involves past violations of the CWA. In the case before the Court, the defendant asserts that there is no evidence of any ongoing violation - either continuous or intermittent - of the CWA and that she is, therefore, entitled to summary judgment dismissing the plaintiff's claim.

In addition, "federal courts can also lose jurisdiction over citizen suits when the defendant can show that the case is moot. The burden of proving that the case is moot is on the defendant. The defendant must show that (1) there is no reasonable expectation that the wrong will be repeated and (2) must make it absolutely clear that allegedly wrongful behavior could not reasonably be expected to recur. *Id.* at p. 669. Ms. Wagner asserts that this case is moot as she has presented evidence to support the conclusion that there is no reasonable expectation that the wrong will be repeated and, for that additional reason, the plaintiff's claim should be dismissed.

Mr. Catchpole alleged, in his complaint, that the defendant placed dredged or fill materials into "navigable waters" without a permit and that this is an on-going violation of the CWA on the grounds that she has not removed the dredge or fill material or taken other remedial actions. Dkt. 35, p. 4.

The facts of this case do not support a conclusion that the actions taken by Ms. Wagner in August 2006 present an ongoing violation or that there was, in fact, an on-going violation of the CWA on February 5, 2009 when the plaintiff's complaint was filed. In this case, Ms. Wagner did not haul additional fill or other material onto the property. Rather, a box scraper was attached to a tractor and that scraper was used to smooth the property within the easement area. Kevin Wagner's declaration testimony, offered on behalf of the plaintiff, is that he "cleared away existing vegetation, overturned the

1    top layers of the soil, leveled off minor elevations in the ground, and filled minor depressions."  Dkt. 20,

2    Exh. F, p. 57.   In addition to this testimony, however, are photographs provided by Ms. Wagner which

3    show the condition of the easement shortly before the area was cleared.  (Dkt. 29, Exh. A-9, A-12, A-13,

4    A-16, A-17 - A-20).   She presented photographs which show Mr. Wagner using the boxscraper within

5    the easement area on August 3, 2006.  (Dkt. 29, Exh. A-21 and A-22).  And, she provided a photograph

6    which clearly depicts the condition of the easement shortly after it was "cleared" (Dkt. 29, Exh. A- 23).

7           As stated at the beginning of this Order, the Court is accepting as true that Ms. Wagner had this

8    clearing work done on wetlands that are under the Clean Water Act.  However, the undisputed evidence

9    before the Court is that the work that was done resulted in a short-term, minimal environmental impact.

10          As noted previously, both Casey Ehron and Kristina, Army Corps of Engineers representatives

11   who each separately visited the site, concluded that there were no differences in grade or contour between

12   the easement area and the surrounding property; there were no impacts to EFH and ESA listed species;

13   the work done did not have any impacts on navigation; there would be a low potential for any cultural

14   resources to exist on the site; there were no ongoing impacts to water quality; and while there may have

15   been slight impacts to water quality, specifically turbidity, that would have been fleeting in nature and

16   have an impact of less than two months.  Dkt. 49 and 50.  In addition, Casey Ehorn confirmed his

17   conclusion that "[t]he work resulted in minor re-grading of wetlands in the easement area, but did not

18   convert wetlands to upland or substantially degrade these wetlands. . . . [t]he work has no impacts to

19   navigation, cultural resources or water quality."  Dkt. 49.  These conclusions are not contradicted with

20   any competent expert evidence.

21          Defendant concedes that "it may be impracticable to regrade the terrain to precisely reconstruct its

22   pre-existing condition."  Dkt. 42, p. 17.  This concession recognizes the fact that there was limited

23   clearing done on the easement with little, if any, change in contour or grade.  No facts have been

24   presented to the Court to support a conclusion that the clearing done in August 2006 is continuing to

25   violate the CWA due to the continued presence of fill.  At the most, there was minimal disturbance to the

26   soil and its ground cover and that this minimal disturbance has recovered.

27          Mr. Catchpole also asserts that, at the very least, the defendant should "leave the wetland alone

28   such that it can 'naturally restore itself.'" Dkt. 42, p. 17.  This argument does not, however, address the

Order on Motions for Partial
Summary Judgment

1  required proof that there be an ongoing violation of the CWA.  While Mr. Catchpole would like to see

2  that the defendant does not continue to use the easement, Mr. Catchpole is not entitled to any relief from

3  this Court based on a one-time, prior violation of the CWA.

4      Finally, the Court is satisfied that Mrs. Wagner is now aware of the requirement to obtain a permit

5  to do any type of grading within the easement and that she will not do any such work in the future without

6  first obtaining a permit.

7      The defendant is entitled to partial summary judgment dismissing the plaintiff's claim against her.

8                              MALICIOUS PROSECUTION

9      Ms. Wagner filed a counterclaim for malicious prosecution.  The asserted factual basis for the

10  claim is set forth in the defendant's counter claim found at pages 5 through 8 of the Defendant's Answer.

11  Dkt. 8.

12      To maintain a common law claim of malicious prosecution, Ms. Wagner must prove the

13  following: (1) that the prosecution claimed to have been malicious was instituted or continued by Mr.

14  Catchpole; (2) that there was want of probable cause for the institution or continuation of the prosecution;

15  (3) that the proceedings were instituted or continued through malice; and (4) that the plaintiff suffered

16  injury or damage as a result of the prosecution.  *Gem Trading Company, Inc. v. Cudahy Corporation,* 92

17  Wash. 2d 956, 962-963 (1979).  However, a "cause of action for malicious prosecution will not lie when

18  there is neither (1) an arrest, nor (in the alternative) attachment of property, nor (2) special injury

19  sustained (meaning an injury which would not necessarily result in similar suits)."  *Id.* at p. 833.  *See also*

20  *Fenner v. Lindsay,* 28 Wash. App. 626, 625 P.2d 180 (1981).

21      Ms. Wagner has neither alleged nor proven an arrest, attachment of property or special injury.

22  Legal costs and alleged mental distress do not constitute the requisite type of injury, absent seizure of

23  property.  *Fenner* at p. 630.

24      The Plaintiff's motion to dismiss the defendant's counter claim for malicious prosecution is

25  GRANTED.

26                                    CONCLUSION

27      In summary, the Court GRANTS the Defendant's motion to dismiss the Plaintiff's claim which

28  asserted violation of the Clean Water Act.  (Dkt. 31).

Order on Motions for Partial
Summary Judgment

1    The court GRANTS the Plaintiff's motion to dismiss the Defendant's counter claim for malicious

2    prosecution.  (Dkt. 19).

3    Based on the Court's order, there remain no issues for determination at trial and the trial date is

4    hereby stricken.

5    DATED this 1st day of June, 2010.

6

7

8    Karen L. Strombom
     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order on Motions for Partial
Summary Judgment