UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STANLEY W. CATCHPOLE,

        Plaintiff,

v.

DIANE WAGNER,

        Defendant.

CASE NO. C 09-5065 KLS

ORDER GRANTING DEFENDANT'S REQUEST FOR ATTORNEY FEES AND COSTS

## I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Order and Judgment Awarding Attorney's Fees, Expert Witness Fees, and Costs. Dkt. 55. The Plaintiff filed his response (Dkt. 56) and the Defendant filed her reply. (Dkt. 58).

Having reviewed the pleadings, the Court concludes that the Defendant is entitled to an award of attorneys' fees in the amount of $50,429.00, expert witness fees in the amount of $18,233.00 and costs in the amount of $2,973.57 for a total of $71,635.57.

## III. AWARD OF FEES AND COSTS

The Clean Water Act gives the Court the discretion to award attorney fees, expert witness fees and costs of litigation "to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d).

However, an award of fees and costs is appropriate only if the Court determines that the claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421, *See Razore v. Tulalip Tribes of Washington,* 66 F.3d 236, 240 (9th Cir. 1995)("We agree with the district court that *Christiansburg Garment Co.* is the proper standard for RCRA and CWA suits."). While a plaintiff's subjective bad faith is not necessary to an award of litigation costs, such a finding strengthens the basis for such an award. *Christiansburg Garment Co., supra,* at p. 422.

## III. DISCUSSION

The Plaintiff filed his Complaint on February 5, 2009 (Dkt. 1) in which he brought a citizen's suit against the Defendant for her violation of the Clean Water Act. The parties agree that such a suit may be maintained only if there is an ongoing violation. The undersigned found, in the Order on Motions for Partial Summary Judgment as follows:

> The facts of this case do not support a conclusion that the actions taken by Ms. Wagner in August 2006 present an ongoing violation or that there was, in fact, an on-going violation of the CWA on February 5, 2009 when the plaintiff's complaint was filed. In this case, Ms. Wagner did not haul additional fill or other material onto the property. Rather, a box scraper was attached to a tractor and that scraper was used to smooth the property within the easement area.

Dkt. #53, p. 10.

1    It is clear that Ms. Wagner is the prevailing party. The question for resolution, then, is
2  whether Mr. Catchpole's suit was "frivolous, unreasonable, or groundless." The undersigned
3  concludes that it was.

4    Prior to February 5, 2009 Mr. Catchpole knew that the Army Corps of Engineers had
5  reached the conclusion that the work done by Ms. Wagner "resulted in minor re-grading of
6  wetlands in the easement area, but did not convert wetlands to uplands or substantially degrade
7  these wetlands." Dkt. 55-2, p. 20[1]. This information was contained in the Memorandum For
8  Record prepared by Casey Ehorn and provided to Mr. Catchpole in response to his Freedom of
9  Information Act request in a letter dated January 23, 2009. Dkt. 55-2, p. 19. The Memorandum
10 For Record went on to note the following:

> 1. The work has no impacts to navigation, cultural resources or water quality.
> 2. The work has no effect on Endangered Species Act listed species or critical habitat.
> 3. The work resulted in minor impacts; the area should naturally restore itself.

14 Dkt. 55-2, p. 20. Attached to the Memorandum for Record was a "Seattle District Enforcement
15 Action Decision Matrix" which noted that the impact on water quality was slight; the expected
16 duration of ecological and/or navigational impacts was "fleeting (e.g. <2 months)"; that there
17 was a "slight" risk to the environment of leaving work in place and unauthorized; that there was
18 no risk to public health or safety of leaving work in place and unauthorized; that it was "not
19 practicable" to implement measures that reduce or compensate for impacts as the "impacts
20 occurred over a year ago". Dkt. 55-2, p. 21.

21   The Clean Water Act was enacted by Congress in order to "restore and maintain the
22 chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In

---

[1] The Court is utilizing the CM/ECF pagination for reference.

1  order to achieve this objective Congress outlawed the unauthorized "discharge of any pollutant

2  by any person." *Id.* § 1311(a). Pollutant, by definition, includes rock and sand. *Id.*§ 1362(6).

3  It is undisputed that Ms. Wagner "discharged" a pollutant on just one occasion – that

4  being August 3, 2006 – 2 years and 5 months prior to commencement of this litigation – when

5  she had the ground in the easement smoothed by the use of a box scraper attached to the back of

6  a tractor. She did not bring in fill material nor did she move substantial quantities of soil, rock or

7  sand. The photographs presented by the Defendant (as referenced in the Order On Motions for

8  Partial Summary Judgment, Dkt. 53, p. 11) show that the box scraper smoothed and slightly

9  disturbed the ground surface of the easement.

10  In his Complaint, the plaintiff asserted that Ms. Wagner's act was an on-going violation

11  of the CWA on the grounds that she has not removed the dredge or fill material or taken other

12  remedial actions. Dkt. 35. p. 4. In his Response to the defendant's motion, Mr. Catchpole

13  asserted that "a polluter remains 'in violation' of the CWA 'so long as it has not put in place

14  remedial measures that clearly eliminate the cause of the violation.' *Gwaltney of Smithfield v.*

15  *Chesapeake Bay Found.,* 484 U.S. 49, 69, 108 S.Ct. 376, 98 L.Ed. 2d 306 (1987)(Scalia, J.,

16  concurring)(footnote omitted)." Dkt. 42, p. 15. He also asserted that "[i]n the case of dredged or

17  fill material, the violation continues so long as the material remains in place." He, however, also

18  conceded that he has never suggested "unsmoothing" as a viable remedy. He then goes on to

19  assert that a "remedy" for the violation is to leave the easement alone in order to permit the

20  return of wetland vegetation, i.e. do not mow on the easement. Dkt. 42, p. 2.

21  For the purpose of summary judgment, the Court accepted that the CWA applied to the

22  actions of Ms. Wagner and that she "discharged a pollutant" into the waters of the United States.

23  She did not, however, dredge the area or add fill to the area to the extent described in the cases

24

relied on by the plaintiff.   Mr. Catchpole offered no expert testimony to contradict the conclusions of the Army Corps of Engineers opinions as set forth in their Memorandum For Record or, for that matter, contained in the declarations filed in support of Ms. Wagner's motion for summary judgment.  That opinion was and is that Ms. Wagner's actions resulted in minor impacts and that the area should naturally restore itself.     The fact that the slightly disturbed **original** soil remains on the property just cannot logically support the conclusion that there is an ongoing violation of the CWA.

Mr. Catchpole asserts that the wetland has not returned to its original condition and that fact supports his view there is an ongoing violation.  However, the issue is whether the defendant's prior act is an ongoing violation of the CWA and it is the Court's conclusion, and that of the Army Corps of Engineers, that it is not.   Further, Mr. Catchpole presented no expert testimony to contradict this conclusion.

The background to the parties' relationship also adds to the Court's conclusion that Mr. Catchpole claim was frivolous, unreasonable and without foundation.  In March 2004 Ms. Wagner advised Mr. Catchpole that she intended to start using her easement.  Mr. Catchpole told her she would not be able to use the easement until she installed "a half-million" dollars worth of improvements.  Dkt. 29, p. 4.  Ms. Wagner followed up on this conversation with a letter of April 23, 2004 again stating she intended to use the easement and requesting that he remove obstructions he had placed in the easement.  Dkt. 29, p. 4.  Mr. Catchpole did not remove the obstructions and ultimately Ms. Wagner filed a civil suit.  The matter went to trial and the judge ruled in favor of Ms. Wagner.  The Court's order, dated June 30, 2006, permanently enjoined Mr. Catchpole from obstructing Ms. Wagner's use of the easement and also ordered him to remove, within ten business days, the following obstructions:  gate and related fencing;

hedge; inoperable vehicles and other items of tangible personal property in the easement area. Dkt. 29, p. 58 – 59.  Mr. Catchpole did not comply with the Court's order.

Mr. Catchpole then approached the Army Corps of Engineers (COE) seeking their involvement and assessment of his property.  The initial review by the COE concluded that the actions of Ms. Wagner did not impact the waters of the United States.  However, a second review conducted, at least in part, at the insistence of Mr. Catchpole resulted in the issuance of the March 7, 2008 Memorandum For Record.  Dkt. 55-2, p. 20.

Once she became aware of the COE's conclusions, Ms. Wagner obtained a written letter from the Army Corps of Engineers (Dkt. 59, p. 8) dated July 2, 2008 confirming that she could both drive on and mow the easement without the need of a permit as such activities "do not usually involve a discharge of dredged or fill material, therefore a Section 404DA permit is not required."  According to the letter, the Army Corps of Engineers furnished a copy of this letter to Mr. Catchpole.

In an attempt by the plaintiff to settle this litigation, Mr. Catchpole proposed a settlement that would result in Ms. Wagner giving up her right to use approximately two-thirds of the easement, the use of which had already been confirmed by the Superior Court.  Dkt. 75-2, pgs. 2 – 7.  In the proposal, Mr. Catchpole suggested that Ms. Wagner have a 20 foot "Travel Way" with the balance reverting to Mr. Catchpole – which would have been approximately 40 feet of the easement that crossed the southern portion of Mr. Catchpole's property.  The Court notes the Plaintiff's request to strike from consideration the proposed settlement.  However, the Court is considering that proposal as well as the response prepared by Ms. Wagner's counsel.  In the Court's view, this proposal confirms Ms. Wagner's position that Mr. Catchpole's goal has always been to limit her use and access to the easement as much as possible.

In his Response, the Plaintiff asserts that he had a "serious, non-frivolous good-faith motive: He wanted Ms. Wagner to mitigate the damage she had caused and to conduct herself in future in a manner that complied with the Clean Water Act." Dkt. 56, p. 8. The facts do not support this assertion. The COE found that there was minimal, fleeting impact from her actions. Further, the complaint was filed several years after the one act, so there was no basis to conclude that she would not follow the law in the future.

Based on these facts, the Court concludes that Mr. Catchpole knew he had no facts to support a claim that the one act by Ms. Wagner constituted an ongoing violation of the CWA and that he filed the civil suit in federal court in bad faith. The fact that Mr. Catchpole went to such great lengths to limit Ms. Wagner's use of the easement should not cause her financial loss by having to defend herself in federal court. The Court concludes that an award of fees is more than warranted.

## IV. REASONABLENESS OF FEES AND AMOUNT

The Court determines the amount of attorneys' fees to be awarded by use of the Lodestar approach. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563-564, 106 S. Ct. 3088 (1986). The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The resulting calculation then provides an objective basis on which to make an initial estimate of the value of a lawyer's services. *Id.* at p. 564.

**a. Reasonable Hourly Rate**

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County,* 341 F.3d 858, 868 (9th Cir. 2003). In making

its calculation, the Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwartz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 906 (9th Cir. 1995).

The Plaintiff does not contest the hourly rates set forth in Ms. Forbes Declaration (Dkt. 55-2, p. 2) nor does he raise any issue regarding the experience, skill or reputation of the attorneys. The Court concludes that the hourly rates are in fact reasonable.

**b. Reasonable Number of Hours**

In determining the reasonable number of hours, the Court may exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

The Defendant concedes she erred in including a claim for hours expended on an Anti-Harassment petition filed in Pierce County District Court. Based on the Court's review of the documents, it appears that 4.9 hours were charged which related to the Anti-Harassment petition for a total of $1,127.00. This sum should be deducted from the amount requested.

The Plaintiff also asserts that the Defendant should not receive an award of attorney fees for time spent with regard to her claim of Malicious Prosecution, which this court dismissed pursuant to the Plaintiff's motion for summary judgment. The Court agrees with that assertion and based on the time identified by defense counsel as having been spent on that claim, the Court will further reduce the request for attorney fees by an additional $1,635.00.

The Court has reviewed the records provided in support of the Defendant's claim for attorney fees. Based on its review, the Court finds that there should be additional reductions for time spent on what appears to be a "Qwest Claim." The Court is not aware of any such claim being involved in this litigation. Therefore, an additional deduction shall be made in the amount of $460.00 for entries for JAF on July 28 and 31, 2009 and April 12, 2010. Other than for these

1  identified reductions, the balance of the records do not include time that appears to be either
2  excessive, redundant or otherwise unnecessary. Therefore, the Court is awarding reasonable
3  attorneys' fees in the sum of $50,429.00.

4  **c. Reasonable Expert Witness Fees.**

5  The Plaintiff does not dispute the reasonableness of the fees requested by the experts
6  utilized by the Defendant in this litigation. The experts were an integral and necessary part of
7  the defense. The undersigned awards fees, as requested, in the sum of $18,233.00.

8  **d. Costs.**

9  The Court may award costs incurred in the successful defense of this litigation and
10  awards costs in the sum of $2,973.57.

11  **V. CONCLUSION**

12  As the prevailing party, Defendant is entitled to an award of reasonable fees and costs.
13  Therefore, IT IS HEREBY ORDERED that defendant's motion for attorneys' fees, costs and
14  litigation expenses (Dkt. 55) is GRANTED in part. The Court awards Defendant reasonable
15  attorneys' fees of $50,429.00, reasonable expert fees of $18,233.00, and reasonable litigation
16  expenses of $2,973.57.

17  DATED this 6th day of August, 2010.

Karen L. Strombom
United States Magistrate Judge